**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick LaCross, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>Knight Transportation Incorporated, *et al.*,<br><br>     Defendants. | No. CV-15-00990-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton's Motion for Class Certification (Doc. 195, PMCC), to which Defendants Knight Transportation, Inc. *et al.*, ("Knight") filed a Response (Doc. 210, Resp.) and Plaintiffs filed a Reply (Doc. 221, Reply). In this Order, the Court will also resolve Defendants' Objections to Plaintiffs' submission of 50 declarations of putative class members in support of Plaintiffs' Reply (Doc. 229). For the reasons stated below, the Court will grant Plaintiffs' Motion for Class Certification.

**I. BACKGROUND**

Knight is a commercial motor carrier based in Phoenix, Arizona that delivers freight throughout the continental United States. Plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton are former owner-operator truck drivers for Knight. Plaintiffs and putative class members, all of whom drove owner-operator trucks for Knight, contend Knight misclassified them as independent contractors in violation of California's labor and employment laws. (PMCC at 1.)

The relationship between Knight and the owner-operator drivers (the "Drivers") is governed primarily by two contracts: (1) the Tractor Lease Agreement ("TLA"), and (2) the Independent Contractor Operating Agreement ("ICOA"). According to Plaintiffs, "Knight classifies its Drivers as 'independent contractors' in the ICOAs for purposes of Arizona's worker's compensation … but maintains extensive control over them through the terms of that same agreement and in practice, such that [the Driver's] independent contractor status can be attacked through facts uniform to all [Drivers]."

On February 6, 2015, another law firm filed a lawsuit against Knight, alleging substantially similar violations as those contained in Plaintiffs' Amended Complaint. (the "*Flores Action*"). (PMCC at 10.) The parties to that lawsuit reached a preliminary settlement on or around December 18, 2017. Plaintiffs and the putative class members in the current action believed the settlement terms were not in their best interest and opted out of the settlement. (PMCC at 10.) Now, Plaintiffs and the putative class members seek to certify a Rule 23(b)(3) class of truck drivers who: "(1) signed materially identical contracts with Knight during the relevant time period, (2) were subject to uniform policies, rules and regulations, (3) were hired to perform the same job duties; (4) were all allegedly uniformly misclassified as independent contractors, and (5) all of whom opted out of a prior settlement in *Flores v. Knight Transportation Inc., et al.*, Case No. CV-15-01817-PHX-SRB ("*Flores*")." (PMCC at 2.) The proposed class includes 183 drivers, all of whom are individually represented by Plaintiffs' counsel.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) provides that a class action—that is, an action in which one or more members of a class sue on behalf of all members of the class—may proceed only if four prerequisites are met:

(1)    Numerosity: "the class is so numerous that joinder of all members is impracticable;"

(2)    Commonality: "there are questions of law or fact common to the class;"

(3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

(4) Adequacy of Representation: "the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

In addition, under Rule 23(b), a court may only certify a class action if there is at least one of the following:

(1) Risk of Inconsistency: the prosecution of separate actions by individual class members would create a risk of inconsistent adjudications or adjudications that would be dispositive of non-party class member interests; or

(2) Appropriate Class-Wide Injunctive Relief: injunctive or declaratory relief is appropriate respecting the class as a whole because the conduct of the opposing party applies generally to the class; or

(3) Predominance and Superiority: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Class certification "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,'" which will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51 (quoting *Falcon*, 457 U.S. at 161).

## III. ANALYSIS

Plaintiffs urge the proposed class meets all the requirements of Rule 23(a) and Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b). The Court will consider each element.

### A. Rule 23(a)(1) - Numerosity

Known as the numerosity requirement, Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589–90 (N.D. Cal. 2015). Impracticality has been interpreted to mean that joinder of all the claims would be difficult and inconvenient. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Although there is no precise number required to meet this prerequisite, a proposed class of 40 or more members tends to indicate that joinder is impracticable. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."); *Huynh v. Harasz*, 2015 WL 7015567, at *5 (N.D. Cal. 2015) ("As other district courts have noted, 'the numerosity requirement is usually satisfied where the class comprises 40 or more members.'") (quoting *Twegbe v. Pharma Integrative Pharmacy, Inc.*, 2013 WL 3802807, at *3 (N.D. Cal. 2013)). In the present case, Plaintiffs propose a putative class consisting of the 183 drivers who opted out of the *Flores* settlement. (PMCC at 11.) Joining 183 drivers would be impracticable. Accordingly, numerosity is satisfied.

### B. Rule 23(a)(2) - Commonality

Under Rule 23(a)(2), a class action must present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have interpreted this section to require a minimum of only one common question of law or fact shared by the class. *Dukes*, 564 U.S. at 359 ("for purposes of Rule 23(a)(2), even a single common question will do.")(alteration and quotation marks omitted); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.")

Satisfying Rule 23(a)(2) is a "'relatively light burden' that 'does not require that all the questions of law and fact raised by the dispute be common… or that the common questions of law or fact predominate over individual issues.'" *Esparza v. SmartPay Leasing, Inc.*, *No.* 2019 WL 2372447, at *2 (N.D. Cal. 2019) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Plaintiffs allege there are numerous common questions of law and fact that satisfy the requirements of Rule 23(a)(2), "including *inter alia*; (1) the enforceability of the forum-selection, venue-selection, choice-of-law[,] and arbitration provisions in the TLAs and ICOAs; (2) whether California or Arizona substantive law applies to the pending claims; (3) whether the terms of the TLAs and/or the ICOAs render the Drivers employees as a matter of law, and if not, then as a common question of law and fact to be decided at trial; (4) whether Knight's standard policies, practices and procedures violated applicable labor and employment laws; (5) the nature of the remedies available to the Drivers; and (6) the viability of Knight's fifty (50) affirmative defenses." (PMCC at 12.)

One of the central issues in this matter is whether the Drivers are independent contractors or employees of Knight. (PMCC at 9.) Courts often certify classes to address employee misclassification claims especially in the trucking context. *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 606 (N.D. Cal. 2014) ("the Court finds that the question of whether Plaintiffs are independent contractors or employees of [defendant] is susceptible to classwide treatment because of [defendant's] uniform policies and practices as to its drivers."); *Norris–Wilson v. Delta–T Group, Inc.*, 270 F.R.D. 596, 604 (S.D. Cal. 2010) (holding that question of whether workers who were hired by the defendant and classified as independent contractors under the same agreement were independent contractors or employees was sufficient to meet commonality requirement under Rule 23(a)(2)). Here, each Driver is governed by Knight's TLA and ICOA contracts. Similar to the drivers in *Villalpando*, the contracts place uniform policies and practices on the putative class members satisfying the commonality requirement under Rule 23(a)(2).

### C.     Rule 23(a)(3) - Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether other class members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). The named plaintiffs' claims and the rest of the class claims need not be identical to satisfy the typicality requirement. *Parsons*, 754 F.3d at 685. Also, if the claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily defeat typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116-18 (9th Cir. 2017).

Plaintiffs urge they and putative class members all "(1) signed materially similar contracts with Knight and Knight Sales during the relevant time period, (2) were subject to the same policies, rules[,] and regulations, (3) were hired to perform the same job duties; (4) were all allegedly uniformly misclassified as independent contractors, and (5) all opted out of the *Flores* settlement." (PMCC at 13.) Moreover, all allegedly "suffered from the same injuries (substantial unreimbursed costs, unpaid wages, and statutory damages for various other alleged violations of California's Labor Code and wage orders)." (PMCC at 13). The Court agrees Plaintiffs' claims are typical of the claims of the class. Additionally, Defendants do not challenge Plaintiffs' argument regarding typicality. Accordingly, Rule 23(a)(3) is satisfied.

### D.     Rule 23(a)(4) - Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "[A] class representative must be part of the class and 'possess the same interest and suffer the

- 6 -

same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). To determine if the named plaintiffs adequately represent the class, courts ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). Defendants do not contest that the named Plaintiffs do not have a conflict of interest or that counsel for Plaintiffs are not competent to represent the class. Failure to respond to a motion may be deemed consent to the Court's granting of that motion. LRCiv 7.2(i). Plaintiffs have therefore shown adequacy of representation under Rules 23(a)(4).

### E.  Rule 23(b)(3) – Money Damages

With the requirements of Rule 23(a) satisfied, the Court now turns to Rule 23(b). Plaintiffs seek class certification pursuant to Rule 23(b)(3). (PMCC at 1.) Rule 23(b)(3) provides for class treatment (1) when questions of law or fact common to class members predominate over questions affecting individual members, the predominance requirement, and (2) when a class action is superior to other available methods for the fair and efficient adjudication of the controversy, the superiority requirement. Fed. R. Civ. P. 23(b)(3).

#### 1.  **Predominance**

The predominance requirement is more demanding than Rule 23(a)(2)'s commonality requirement. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)"). The predominance inquiry "focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quotations omitted). "[C]ourts have a duty to take a close look at whether common questions predominate over individual ones to ensure that individual questions do not overwhelm questions common to the class." *Senne v. Kansas City Royals*

*Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (quotations omitted). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citations omitted).

The resolution of the Drivers' classification, as employees or independent contractors, is at the center of the litigation. Both parties agree California and Arizona law conflict on the test applicable to determining whether a worker is an employee or independent contractor. (Resp. at 4.) Plaintiffs argue California substantive law applies to all drivers and that, under California law, the Drivers should be considered employees. (PMCC at 15-19.) Defendants assert there is "no common evidence that could demonstrate either California or Arizona law applies to the entire putative class." (Resp. at 4.) Accordingly, Defendants urge class certification is inappropriate. Plaintiffs counter Defendants' claim that there is no common evidence by submitting 50 declarations from putative class members showing, among other things, that "(i) 100% leased their trucks from Defendants; (ii) 100% lived in California, (iii) only one driver had [an] Arizona CDL (98%), and (iv) 43 out of 50 drivers (86%) said they spent more than 50% of their drive time in California."[1] (Reply at 2.)

"Concerns over which state's laws apply to a proposed class do not necessarily preclude a 23(b)(3) action. But understanding which law will apply before making a predominance determination is important when there are variations in applicable state law and potentially varying state laws may defeat predominance in certain circumstances" *Senne* 934 F.3d at 928 (internal citations omitted). "A federal court sitting in diversity must

---

[1] Defendants' object to these Declarations in Doc. 229 arguing the 50 declarations are improper because they raise new evidence for the first time in the Reply. (Doc. 229 at 2.) Defendants do not adequately explain how the 50 declarations prejudice the Defendants. In any event, to the extent the Court relies upon the declarations, Defendants are not prejudiced.

- 8 -

look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). "Arizona courts apply the Restatement (Second) of Conflict of Laws ... to determine the controlling law for multistate torts." *Bobbitt v. Milberg LLP*, 801 F.3d 1066, 1070 (9th Cir. 2015). Defendants admit each putative class member signed Defendants' ICOAs and are thus governed by the same choice of law provisions. (Resp. at 5.) Accordingly, for any causes of action that fall within the choice of law provisions, predominance would not be defeated since any choice of law analysis would be common to all Plaintiffs.

Further, separate from the choice of law provisions, a common nucleus of facts and potential legal remedies dominates this litigation. For example, provisions in the ICOAs and TLAs required owner-operators to install a Qualcomm system in their tractor (necessary for keeping required federal hours of service logs) from Knight and maintain Statutory Work Accident insurance from Knight.[2] (Resp. at 16-17.) Plaintiffs allege Defendants used these provisions to assert significant control over drivers, thus impacting their status as independent contractors.[3] (Reply at 14.) Facts such as these would be relevant under either Arizona or California law when determining drivers' status as employees or independent contractors. In Arizona, "[t]he right to control or supervise the method of reaching a specific result determines whether an individual is an employee or an

---

[2] Defendants, in their Response, argue the Qualcomm system and insurance requirement should not be considered in determining putative class member classification because "'any supervision or control exercised by an employing unit to comply with any statute, rule or code adopted by' the federal government or state of Arizona 'may not be considered for the purposes of determining the independent contractor or employment status of any relationship or individual[.]'" (Resp. at 17 (quoting A.R.S. § 23-1602)). As Plaintiffs note in their Reply, the Arizona legislature enacted A.R.S. §23-1601, *et seq.* on August 6, 2016. The statute makes no mention of retroactive application. This case was filed prior to 2016 so A.R.S. § 23-1602 does not apply. Further, Plaintiffs do not cite these facts because Defendants required owner-operators to purchase a Qualcomm or insurance but instead allege Defendants required the owner-operators to exclusively purchase these items from Knight rather than the open market.

[3] Plaintiffs allege Defendants required drivers to "lease a Qualcomm through Knight, pay Knight for use of that Qualcomm, and because the unit and service were provided by Knight, Knight used the Qualcomm to track [Drivers'] locations" (Reply at 14.) Additionally, Plaintiffs claim, Defendants required Drivers to "purchase insurance approved by Knight through Knight." (Reply at 14.)

independent contractor." *Home Ins. Co. v. Industrial Comm'n,* P.2d 801, 803 (1979). Arizona courts "look to the totality of the facts and circumstances of each case, examining various indicia of control." *Id*. In California, there are two competing tests for determining independent contractor status: (1) the "ABC Test," as articulated in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles*, 4 Cal. 5th 903 (2018), and (2) the multi-factor test set forth in *S.G. Borello & Sons v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989). Facts showing Defendants' control over Plaintiffs' equipment and work would also be relevant for either California test. Accordingly, the differences between Arizona and California law are not sufficiently substantive to predominate over the shared claims. *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020) ("A conclusion as to which state's law applied was not necessary to the predominance determination … because the law of each state at issue shared common questions that were central to the resolution of the claims and capable of resolution in one fell swoop."); *Hanlon* 150 F.3d at 1022 (variations in products liability, breaches of express and implied warranties, and 'lemon laws' across the states did not defeat predominance because there were still sufficient common issues to warrant a class action).

2. **Superiority**

In determining superiority, courts must consider the four factors of Rule 23(b)(3). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 562 (2d ed.1986).

The first factor is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Here Plaintiffs and the putative class chose to opt out of the *Flores* settlement and remain in this proposed class. Therefore, it is clear they do not wish to individually control the prosecution of separate actions.

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits. At present, the Court is not aware of any other litigation concerning this matter.

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This case involves California drivers and an Arizona corporation, so the Court finds the District of Arizona a desirable forum for adjudicating the claims. Further, this case has already been litigated by the parties for the past seven years resulting in this case being transferred between state and federal court and California and Arizona venues. The extensive litigation provided both parties ample opportunity to challenge the appropriateness of the current forum.

The fourth factor is "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). In the present case, liability issues all revolve around the putative class members' classification as independent contractors or employees. As a result, Plaintiffs contend their case rises or falls across the class as a whole and individual inquiries "will be minimal (if at all)." (PMCC at 23.) This Court agrees. Accordingly, it is unlikely there will be many difficulties in managing the class action. For the forgoing reasons, Plaintiffs have satisfied the superiority requirement.

**IV. CONCLUSION**

Plaintiffs seek class certification via Rule 23(a) and Rule 23(b)(3). *See* Fed. R. Civ. P. 23. The Court finds each element of Rule 23(a) and Rule 23(b)(3) has been satisfied and the class should be certified.

**IT IS THEREFORE ORDERED** granting Plaintiffs' Motion for Class Certification (Doc. 195).

. . . .

. . . .

1 **IT IS FURTHER ORDERED** overruling Defendants' Objections to Plaintiffs' submission of 50 declarations of putative class members in support of Plaintiffs' Reply (Doc. 229).

Dated this 11th day of January, 2022.

_____
Honorable John J. Tuchi
United States District Judge