**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrick LaCross, *et al.*, | No. CV-15-00990-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Knight Transportation Incorporated, *et al.*, | |
| Defendants. | |

Before the Court is the question of what law will be applied to Plaintiffs' claims in this matter, the law of Arizona, California, or some combination thereof. At the request of the Court, the parties simultaneously submitted briefs on the issue (Doc. 248, Def. Br.; Doc. 251. Pl. Br.) and then responsive briefs (Doc. 254, Pl. Resp.; Doc. 255, Def. Resp.). The Court will resolve the choice of law question without oral argument. LRCiv 7.2(f).

## I.     BACKGROUND

This lawsuit began almost ten years ago, on March 3, 2014, when Plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton filed a Class Action Complaint in the Superior Court of California. (Doc. 1-3 at 5–39, Compl.) Plaintiffs seek damages against the companies for which they operated trucks, Defendants Knight Transportation, Inc. and Knight Truck and Trailer Sales, LLC (collectively, "Knight")—both Arizona companies—for what Plaintiffs claim are multiple wage and hour violations.

Knight removed this case to the United States District Court for the Central District of California (Doc. 1), which in turn transferred the case to this Court based on enforceable

forum selection clauses in Plaintiffs' contracts with Knight (Doc. 60). Plaintiffs filed the First Amended Complaint (FAC), the operative pleading, more than seven years ago, on January 22, 2016. (Doc. 102, FAC.) After the parties requested multiple continuances in the case for myriad reasons, Plaintiffs filed their Motion for Class Certification on May 12, 2021 (Doc. 195), which stated that the proposed class consists of 183 Plaintiffs. (Doc. 195.) On January 11, 2022, the Court entered an Order granting Plaintiffs' Motion for Class Certification (Doc. 230), and the Ninth Circuit Court of Appeals denied Knight's petition to appeal that Order (Doc. 232).

In the FAC, Plaintiffs raise 13 claims, citing California state law as the claims' legal bases. (FAC ¶¶ 136–275.) Knight contends that Arizona law applies to Plaintiffs' claims based on an Arizona choice of law provision in Independent Contractor Operating Agreements (ICOAs) or Tractor Lease Agreements (TLAs) that Plaintiffs entered into with Knight, and Knight further argues that Arizona law, as the law of this Court's forum state, should apply even if the Court declines to enforce the choice of law agreement to Plaintiffs' claims. For their part, Plaintiffs contend, as they alleged in the FAC, that California law should apply because the choice of law agreements are unenforceable and California has a greater interest in Plaintiffs' claims. In certifying the class, the Court found the predominance requirement in Federal Rule of Civil Procedure 23(b)(3) was met because the question whether the choice of law agreements are enforceable is common to all Plaintiffs, who each signed essentially the same choice of law agreement. (Doc. 230 at 9.) Knight argues that, if the Court decides not to apply the choice of law provisions, "individual questions would necessarily arise to determine which state's law applies to each class member and to each claim," and "[s]uch individualized inquiries should lead the court to decertify the class." (Def. Br. at 12.)

## II.     ANALYSIS

When the Court has jurisdiction based on the diversity of the parties, as in this case, it must apply Arizona's choice of law rules to decide which state's law should govern the issues raised in the case. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496

(1941). This is so even where, as here (Doc. 60), another district court transferred the case to this Court under 28 U.S.C. § 1404(a) if the transfer was based on the parties' agreement to bring cases in this district as expressed in an enforceable forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 571 U.S. 49, 64–66 (2013). Arizona has adopted the choice of law rules of the Restatement (Second) of Conflict of Laws ("Restatement"). *Bryant v. Silverman*, 703 P.2d 1190, 1191 (Ariz. 1985).

As a first principle, the Restatement provides that the Court must make a choice of law determination on an issue-by-issue or claim-by-claim basis—a determination that may lead to depecage. *E.g.*, Restatement § 187(1) (requiring analysis by "particular issue"); *Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 941 (D.D.C. 1984) (quoting Reese, *Depecage: A Common Phenomenon in Choice of Law*, 73 Columbia L. Rev. 58, 59–60 (1973) ("The search . . . is not for the state whose law will be applied to govern all issues in a case; rather, it is for the rule of law that can most approximately be applied to govern the particular issue")).

In Count 1 of the FAC, Plaintiffs principally seek a declaration that they were "misclassified" as independent contractors when they were Knight's employees. (FAC ¶¶ 136–48.) In Counts 2 through 4 and 8 through 9 of the FAC, Plaintiffs raise claims under California's Industrial Welfare Commission (IWC) Wage Order No. 9 and the California Labor Code. (FAC ¶¶ 149–78, 203–16.) Counts 5 through 7 and 10 through 12 of the FAC raise claims primarily under California's Labor Code. (FAC ¶¶ 179–202, 217–67.) And Count 13 of the FAC is an unfair business acts claim under California's Business and Professions Code. (FAC ¶¶ 268–75.)

Under Arizona law, the starting point in choosing the state law to be applied to a claim is determining whether a "true difference" exists in the laws of the states under consideration. *Gnatkiv v. Machkur*, 372 P.3d 1010, 1014 n.1 (Ariz. Ct. App. 2016) (quoting *Lucero v. Valdez*, 884 P.2d 199, 207 (Ariz. Ct. App. 1994) (McGregor, J., dissenting) for the proposition that "this Court performs a choice of law analysis only when a true difference in the law of the two jurisdictions exists[,] and no true conflict exists unless the laws of the two

jurisdictions differ"); see also Metro. Prop. & Cas. Ins. Co. v. Gilson, No. CV-09-01874-PHX-GMS, 2010 WL 2721906, at *2 (D. Ariz. July 7, 2010) (applying Arizona's choice of law rules), aff'd, 458 F. App'x 609 (9th Cir. 2011). If no true difference exists, the Court "need not perform a choice of law analysis." Gnatkiv, 372 P.3d at 1014 n.1.

Plaintiffs' proffered choice of law analysis (Pl. Br.; Pl. Resp.) is defective in multiple ways. First, it contains no comparison of the Arizona and California laws to identify a "true difference." Indeed, Plaintiffs' analysis does not even identify the applicable California law with regard to worker classification or any Arizona laws that would apply if the Court enforces the parties' choice of law agreements in the ICOAs and TLAs or otherwise decides the law of the forum state is appropriate here. Second, Plaintiffs fail to evaluate the 13 counts in the FAC on a claim-by-claim or issue-by-issue basis. In these respects, Plaintiffs' briefing failed to follow the choice of law methodology that Arizona law requires and was largely unhelpful to the Court, significantly extending the time the Court required to resolve the questions before it.[1]

The Court will now perform the analysis Plaintiffs failed to do and examine Arizona and California law with regard to Plaintiffs' claims.

### A.     Law to be Applied to the Classification Claim

Count 1 of the FAC first presents not a choice of law question, but simply a question of law. In Count 1, Plaintiffs seek a declaration that they were "misclassified" as independent contractors when they were Knight's employees. Plaintiffs seek such declaratory relief under California's Code of Civil Procedure § 1060 (even though California is not the "forum state" in this action, as Plaintiffs mistakenly allege (FAC

---

[1] In support of their request that the Court disregard the parties' Arizona choice of law agreement and apply California law, Plaintiffs cite Central District of California Judge Jesus Bernal's 2015 decision enforcing the parties' Arizona forum selection agreement and transferring this case to the District of Arizona. (Pl. Br. at 4.) There, Judge Bernal included a footnote in which he stated that "Plaintiffs' misclassification claims . . . would likely not be governed by Arizona law" (Doc. 60 at 6 n.4) without supporting that statement with a choice of law analysis, as this Court is required to conduct. Judge Bernal's statement was only made in the context of his decision to enforce the forum selection clause and is of no moment in the Court's actual choice of law determination.

¶ 139)). In their briefs, neither side addresses under what legal authority this claim should proceed.

### 1. The Declaratory Judgment Act

For all intents and purposes, Plaintiffs argue—rather than allege—in the FAC that a federal court sitting in diversity should apply the forum state's declaratory judgment act—or, in California's case, rule—in lieu of the Federal Declaratory Judgment Act, citing among other unreported district court decisions *Schwartz v. U.S. Bank, National Association*, 2012 WL 10423214, at *15 (C.D. Cal. Aug. 3, 2012). In *Schwartz*, the court states that, under *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), "federal courts have consistently applied California Code of Civil Procedure § 1060 rather than the federal Declaratory Judgment Act when sitting in diversity," presumably based on a corollary finding that California's Code of Civil Procedure § 1060 constitutes substantive rather than procedural law. *Id.*

Courts in this and other districts have concluded the opposite based on United States Supreme Court precedent. The Supreme Court has held, "We have long considered 'the operation of the Declaratory Judgment Act' to be only 'procedural,' leaving substantive rights unchanged." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). Thus, in determining whether to apply the Arizona Uniform Declaratory Judgments Act or the Federal Declaratory Judgment Act in diversity cases, Arizona courts have concluded that the "[Federal Declaratory Judgment] Act is a procedural statute" and "under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 330 F. Supp. 3d 1153, 1159 (D. Ariz. 2016) (internal quotation omitted); *see also, e.g., Inst. for Studies Abroad, Inc. v. Int'l Studies Abroad, Inc.*, 263 F. Supp. 2d 1154, 1156 (S.D. Ind. 2001). As the Ninth Circuit has observed, "[t]he Federal Declaratory Judgment Act was not a jurisdiction-conferring statute, but an act to establish a new procedure in federal courts . . . [t]hus the operation of

the Declaratory Judgment Act is procedural only." *Id.* (quoting *West Publ'g Co. v. McColgan*, 138 F.2d 320, 324 (9th Cir. 1943)). As a result, the Court will apply the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and not California's procedural rule (or Arizona's procedural statute), as the mechanism by which Plaintiffs may bring a claim for declaratory relief.

Next, with respect to Plaintiffs' request in Count 1 for a determination whether Plaintiffs were independent contractors or Knight's employees, the Court must first determine whether a true difference exists in the common law of Arizona and California.

### 2.    Comparison of Arizona and California Law

The Arizona Supreme Court has held that "[t]he right to control or supervise the method of reaching a specific result determines whether an individual is an employee or an independent contractor." *Home Ins. Co. v. Indus. Comm'n,* 599 P.2d 801, 803 (Ariz. 1979). "It is not the appellation which the parties give to the relationship, but rather the objective nature of the relationship, determined upon an analysis of the totality of the facts and circumstances of each case, which is determinative." *Anton v. Indus. Comm'n of Ariz.*, 688 P.2d 192, 194–95 (Ariz. Ct. App. 1984); *see also Danial v. Indus. Comm'n*, 434 P.3d 592, 594 (Ariz. Ct. App. 2019).

In the context of determining if a genuine issue of fact existed as to whether a newspaper company could be liable for injuries caused by a newspaper delivery man classified as an "independent contractor," the Arizona Supreme Court referred to the Restatement (Second) of Agency, which Arizona has adopted. Santiago v. Phoenix Newspapers, Inc., 794 P.2d 138, 141 (Ariz. 1990). The Restatement of Agency defines an employee, or servant, as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Id. (quoting Restatement of Agency § 220 cmt. c). The Arizona Supreme Court cited Home Insurance Company and Anton to explain that "[c]ontract language does not determine the relationship of the parties." Id. In deciding the

"objective nature of the relationship," the Court stated a fact finder must evaluate a number of criteria, including:

1. The extent of control exercised by the master over details of the work and the degree of supervision;

2. The distinct nature of the worker's business;

3. Specialization or skilled occupation;

4. Materials and place of work;

5. Duration of employment;

6. Method of payment;

7. Relationship of work done to the regular business of the employer;

8. Belief of the parties.

*Id.* at 141–42.

With regard to the first criterion—the extent of control exercised by the master—a fact finder must look to "indicia of control," none of which by itself is dispositive. *Id.* at 143 (citing *Cent. Mgmt. Co. v. Indus. Comm'n of Ariz.*, 781 P.2d 1374, 1377 (Ariz. Ct. App. 1989)). Those include the criteria listed above as well as "who furnishes the necessary equipment, the right to hire and fire, [and] who bears responsibility for worker's compensation insurance." *Cent. Mgmt. Co.*, 781 P.2d at 1377 (citing *Home Ins. Co.*, 599 P.2d at 803). The Arizona Supreme Court also noted with approval the 20-factor list used by the Internal Revenue Service in determining whether an individual is an employee. *Santiago*, 794 P.2d at 145 & n.6.

"A strong indication of control is an employer's power to give specific instructions with the expectation that they will be followed." *Id.* at 142–43. In *Home Insurance Company*, the Arizona Court of Appeals held that a delivery driver could reasonably be expected to meet established departure and arrival times and not deviate from well-recognized delivery routes without creating an employment relationship, because the right-to-control test "require[s] sufficient control over the *method* of reaching a desired result as opposed to merely controlling the end result of the work." 599 P.2d at 804; *see also Cent. Mgmt. Co.*, 781 P.2d at 1376–77 ("If the right to control the details goes no further than is

necessary to ensure a satisfactory end result, it does not establish employment." (internal quotation and citation omitted)).

By contrast, California courts have set forth a more complicated set of standards for the determination of whether an individual is an independent contractor or employee depending on the type of claim alleged. As a baseline, California's test of employment status is virtually identical to Arizona's test, that is, "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 404 (Calif. 1989) (internal quotation and citation omitted). "If control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established." *Tieberg v. Unemployment Ins. App. Bd.*, 471 P.2d 975, 977 (Calif. 1970) (citation omitted). Like Arizona courts, California courts consider the factors from the Restatement of Agency in examining control, and no factor is dispositive, but rather factors are considered together and their weight depends on the facts and circumstances of each individual case. *S.G. Borello & Sons*, 769 P.2d at 404.

The California approach begins to diverge from the Arizona case law by explicitly viewing the facts and circumstances of a worker's status through the lens of the legal basis for the claim being asserted. For example, in light of the fact that *Borello* was a worker's compensation case, the *Borello* court looked to the history and remedial purposes of California's Worker's Compensation Act, pointing out that "[t]he common law and statutory purposes of the distinction between 'employees' and 'independent contractors' are substantially different." *Id.* at 405. The common law was originally "developed to define an employer's liability for injuries caused *by* his employee," while "the basic inquiry in compensation law involves which injuries *to* the employee should be insured against by the employer." *Id.* Thus, in California, a worker's status is to be resolved "with deference to the purposes of the protective legislation." *Id.* at 406. "The nature of the work, and the overall arrangement between the parties, must be examined to determine whether they come within the 'history and fundamental purposes' of the statute." *Id.* at 406.

Thus, in *Borello*, the court applied a "right to control overall process" test—just as an Arizona court would apply—but in a manner it believed was consistent with the policy objectives of California's Worker's Compensation Act. *Id.* at 407–408. Even though the cucumber harvesters—the workers at issue—were responsible for controlling the details of many aspects of their work, the court examined the economic realities of their work arrangement, noting that the grower for whom the harvesters worked maintained all necessary economic control over the work, and the grower's lack of control of some details was only attributable to the simplicity of the harvesters' work. *Id.* In short, the grower controlled the overall process, and the harvesters were its employees for worker's compensation purposes. *Id.* at 408–10.

In *Dynamex Operations West, Inc. v. Superior Court of Los Angeles County*, 4 Cal. 5th 903 (2018), the California Supreme Court took this approach a step further, significantly refining the test California courts are to use in determining if a worker is an independent contractor or employee for claims brought under a California IWC Wage Order, such as Counts 2 through 4 and 8 through 9 in this lawsuit. Under the refined test—dubbed the "ABC test"—"a worker is presumptively an employee, and the hiring entity bears the burden to show otherwise." *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1154 (2019).

> The ABC test is conjunctive, and the hiring entity's failure to establish *any* of the following three factors precludes a finding that the worker is an independent contractor: "(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business, *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed."

*Id.* (quoting *Dynamex*, 4 Cal. 5th at 957). While part A of the test is akin to Arizona law's and *Borello*'s "right to control" test, parts B and C are additional requirements, *id.* at 1154-55, and constitute a material difference with Arizona law.

In *Gonzales*, the California Court of Appeal clarified that the ABC test pertains to claims brought under the IWC Wage Orders and Wage Order-related Labor Code claims, but not those Labor Code claims untethered to a Wage Order. *Id.* at 1157 (stating "we conclude that the ABC test applies to Labor Code claims which are either rooted in one or more wage orders, or predicated on conduct alleged to have violated a wage order"). As to non-Wage Order Labor Code claims, "the *Borello* test remains appropriate." *Id.*[2]

In sum, Arizona law and California law under its *Borello* test are substantially similar as to the determination whether a worker is an independent contractor or employee. But the fact that California courts must weigh the totality of the facts and circumstances in view of the legislative or common law purpose underlying the claim at issue is a distinction with enough of a difference, and the Court concludes a true difference exists between Arizona law and California's *Borello* test, at least for the purposes of the choice of law analysis. Unquestionably, a true difference also exists between Arizona law and California's *Dynamex* test, which California courts apply to Wage Order-related claims.[3]

In light of the differences between Arizona and California law as to driver classification, the Court will continue with the choice of law analysis. And because the classification law applied will depend on the underlying claim for relief, the Court will determine the choice of law for classification in conjunction with the choice of law for the underlying claims. *See, e.g.*, *Narayan v. EGL, Inc.*, 616 F.3d at 895, 899 (9th Cir. 2010) (noting where underlying claims arose under California Labor Code, a California regulatory scheme, California law should apply to define the boundaries of that scheme). In this sense, determining whether a driver is properly classified as an employee is an element of the underlying claim.

---

[2] California Labor Code § 2775, which became effective January 1, 2020, extended the ABC test to statutory claims arising after its effective date. Plaintiffs' claims in this lawsuit arose prior to 2020, so the *Borello* test applies to the non-Wage Order claims, if the Court applies California law.

[3] The fact that California applies a different legal standard to a classification claim based on the underlying claim for relief means that Plaintiffs' generalized request for declaratory relief in Count 1 of the FAC may result in more than one answer.

**B.      Law to be Applied to Plaintiffs' Wage-Related Claims**

**1.      Comparison of Arizona and California Law**

**a.      Unreimbursed Expense and Illegal Deduction Claims**

In Count 2 of the FAC, Plaintiffs seek damages representing reimbursement "for expenses incurred by them in the performance of their job" under the California Labor Code (FAC ¶ 150), including "costs and expenses of owning and/or leasing, repairing, maintaining and fueling the trucks and vehicles they drove" (FAC ¶ 154). Plaintiffs also seek damages based on California Wage Order No. 9-2001, which requires an employer to provide and maintain tools and equipment necessary for an employee's performance of a job. (FAC ¶ 152). Under California law, Count 2 could be construed to contain two separate claims because a factfinder could well determine that a driver is an independent contractor under the *Borello* test, to be applied to Plaintiffs' claim under the Labor Code, but that the driver is an employee under the *Dynamex* test, to be applied to Plaintiffs' claim under Wage Order 9. *See, e.g.*, *Salter v. Quality Carriers, Inc.*, 2021 WL 5049054, at *6 (C.D. Cal. Oct. 27, 2021).

Relatedly, in Count 7, Plaintiffs seek damages under the Labor Code for what they allege were "illegal deductions" from their wages, including "costs of acquiring necessary equipment, operating and repairing necessary equipment, overweight tickets and other fines, claims for [lost] or damaged cargo, property damage and bodily injury claims, [and] fuel and service claims granted to customers." (FAC ¶ 198.)

Courts examining such claims have held that they are preempted by federal Department of Transportation (DOT) Truth-in-Leasing regulations. *See Salter*, 2021 WL 5049054, at *10–11. Those regulations address "[t]he leasing of equipment with which to perform transportation regulated by the Secretary" of the DOT. 49 C.F.R. § 376.1. Where a carrier performs "authorized transportation in equipment it does not own," then "a written lease granting the use of the equipment" must be in place. 49 C.F.R. § 376.11. "The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services,

based plates and licenses, and any unused portions of such items." 49 C.F.R. § 376.12. Because these federal regulations provide that the motor carrier and driver must agree which party shall bear these costs, it appears that Counts 2 and 7, as brought under California law, are preempted.

The parties did not brief whether Arizona law has an analog to Plaintiffs' operating costs, tools-and-equipment, and deductions claims under the California Labor Code, and the Court is aware of none. If Counts 2 and 7 have any legal basis under California law considering the rules of preemption, then Arizona and California law differ as to the claims contained in Counts 2 and 7. But if the claims brought under California law are preempted, then no true difference exists and the claims under either state's law fail.

### b.      Minimum Wage Claims – Actual Miles and Hours

In Count 3, Plaintiffs again bring claims under both the California Labor Code and Wage Order 9. Although Plaintiffs allege they were paid based on a piece rate formula for each trip, Plaintiffs seek damages for unpaid minimum wages, to include pay for "Waiting Time" as well as "pre and post trip inspections, fueling trucks, filling out paperwork, and waiting for dispatch." (FAC ¶¶ 160, 164.) In Count 4, brought under both the California Labor Code and Wage Order 9, Plaintiffs again seek damages for unpaid minimum wages, here based on the time Plaintiffs allege having spent to drive the actual miles from pickup to delivery. In Counts 5 and 6, Plaintiffs seek damages under the Labor Code for Knight's alleged failure to pay "for all hours worked" (FAC ¶ 182) and "for time spent driving actual miles" (FAC Count 6 & ¶ 190).

In *Ayala v. U.S. Xpress Enterprises, Inc.*, the Ninth Circuit Court of Appeals affirmed the district court's summary judgment in favor of a motor carrier on the plaintiff driver's wage claims brought under California's Labor Code. 851 F. App'x 53 (9th Cir. 2021). The plaintiff in *Ayala* alleged that the motor carrier's mileage-based compensation system paid for driving time only, and that "non-driving tasks" like fueling, pre-trip and post-trip inspections, and waiting at customer sites and terminals were unpaid. *Ayala v. U.S. Xpress Enters., Inc.*, 2020 WL 3071707, at *1 (C.D. Cal. June 9, 2020). The district

court granted summary judgment to the employer because "the driver's pay does not depend on the actual number of miles driven" and the employer's "compensation in effect pays a fixed-fee per trip." *Id.* at *8. Thus the plaintiff "misses the fact that [the defendant] pays a fixed sum to its drivers for each trip—an amount the drivers are informed of in advance. The mileage, X, associated with a trip, is merely used as an intermediate step in arriving at the final fixed-fee amount." *Id.* at *11. The district court rejected the plaintiff's "position that any system denominated in miles requires supplemental pay for non-driving tasks" and found that the argument "attach[es] too much importance to form over substance." *Id.* at *10–11.

In affirming, the Ninth Circuit stated, "[t]he minimum wage laws exist to ensure that workers receive adequate and fair pay, not to dictate to employers and employees what pay formulas they may, or may not, agree to adopt as a means to that end." 851 F. App'x at 54 (quoting *Oman v. Delta Air Lines, Inc.* 466 P.3d 325, 341 (Cal. 2020)). "Accordingly, the district court did not err in looking to the understanding of the parties to determine the scope of the piece-rate pay." *Id.*; *see also Salter*, 2021 WL 5049054, at *9–10 (determining that the plaintiff's claims for failure to pay minimum wage associated with inspections, meetings, and washes failed because the terms of compensation were governed by the agreement between the parties).

It appears the same reasoning applies to Counts 3 through 6 in this case. *See Martinez v. Knight Transp., Inc.*, 2023 WL 2655541, at *2 (E.D. Cal. Mar. 27, 2023) (noting acknowledgement of the parties that *Ayala* "all but eliminat[ed] Plaintiff's minimum wage/piece rate claim"). If so, California law only guarantees that the drivers' piece rate pay scheme—which by contract set forth compensation for a set of tasks— resulted in pay to the drivers at or above the state's minimum wage. *See* Cal. Labor Code §§ 1197, 1197.1. That is,

> For all hours worked, employees are entitled to the greater of the (1) amount guaranteed by contract for the specified task or period, or (2) the amount guaranteed by minimum wage. Whether a particular compensation scheme

complies with these obligations may be thought of as involving two separate inquiries. First, for each task or period covered by the contract, is the employee paid at or above the minimum wage? Second, are there other tasks or periods not covered by the contract, but within the definition of hours worked, for which at least the minimum wage should have been paid? For purposes of evaluating whether an employee has received at least the hourly minimum wage for tasks or periods compensated under the contract, it is generally permissible to translate the contractual compensation—whether it can be done by task, work period, or other reasonable basis—into an hourly rate by averaging pay across those tasks of periods.

*Oman* 466 P.3d at 336–37.

By comparison, Arizona also requires payment of a minimum wage, A.R.S. § 23-363 et seq., and Arizona regulations state that, for minimum wage purposes, an employee's hourly wage is determined by the workweek. Alonzo v. Akal Sec. Inc., No. CV-17-00836-PHX-JJT, 2017 WL 5158576, at *3 (D. Ariz. Nov. 7, 2017) (citing Ariz. Admin. Code § R20-5-1206(C) (2017)). Arizona and California law differ as to this claim because Plaintiffs' claims for compensation for waiting time, inspections, fueling, paperwork, and actual miles driven are not claims premised on hours worked in a workweek, and even where Ayala serves to eviscerate Plaintiffs' claims for actual hour and mile compensation under the Labor Code and Wage Order 9, Arizona's and California's minimum wage acts differ.[4]

### c.    Minimum Wage Claims – Meal and Rest Periods

Plaintiffs also bring claims under both the California Labor Code and Wage Order 9 in Counts 8 and 9. Plaintiffs again seek damages for unpaid minimum wages, here based on the time Plaintiffs allege having spent for meal periods (Count 8) and rest periods (Count 9). (FAC ¶¶ 206, 213.) In 2018, the Federal Motor Carrier Safety Administration

---

[4] For example, in 2016, California's minimum wage was $10 per hour (Cal. IWC MW-2016), and Arizona's minimum wage was $8.05 per hour (A.R.S. § 23-363 (2015)). In 2017, California's minimum wage was $10.50 per hour for employers with more than 25 employees (Cal. IWC MW-2017), and Arizona's minimum wage was $10 per hour (A.R.S. § 23-363 (2016)). The states also have different provisions for overtime pay. (*Compare* Cal. Labor Code § 510 *with* A.R.S. § 23-391 (based on the federal Fair Labor Standards Act).)

(FMCSA) entered an order pursuant to 49 U.S.C. § 31141(a) stating that California's meal and rest period pay rules concern "commercial motor vehicle safety" applicable to drivers of property-carrying commercial motor vehicles, who are subject to federal hours of service regulations under 49 U.S.C. § 31136. 83 Fed. Reg. 67,470–75. The FMCSA thus found all the requirements of preemption were met and ordered that California may no longer enforce the meal and rest period pay rules with respect to property-carrying commercial motor vehicle drivers who are subject to FMSCA's hours of service rules. *Id.* at 67,474–80. The Ninth Circuit upheld the preemption order, *Int'l Brotherhood of Teamsters, Local 2785 v. FMCSA*, 986 F.3d 841 (9th Cir. 2021), and ruled it was retroactive, *Valiente v. Swift Transp. Co. of Ariz., LLC*, 54 F.4th 581 (9th Cir. 2022).

It thus appears from Plaintiffs' allegations that their minimum wage claims for meal and rest periods under Wage Order 9 and the Labor Code are preempted, and thus any claims under California law would at most fall under California's minimum wage statute. *See Martinez*, 2023 WL 2655541, at *2 (noting the plaintiff's statement that *Valiente* "completely eviscerated [the plaintiff's] . . . causes of action for violations of California's meal and rest break laws and, with it nine years of potential liability"). As noted above, Arizona and California law are distinct from each other as to minimum wage requirements.

### d.    Wage Statement, Pay upon Discharge, and PAGA Claims

In Counts 10 through 13, Plaintiffs raise claims under the Labor Code and Wage Order 9 that are derivative of the wage-related claims detailed above.[5] In Count 10, Plaintiffs allege that Knight "knowingly and intentionally failed to furnish Plaintiffs . . . with timely, itemized statements showing (a) total hours worked, (b) gross wages earned, (c) all deductions, and/or (d) all applicable hourly rates in effect during each respective pay period and the corresponding number of hours worked at each hourly rate," all of which are required by Labor Code § 226(a) and Wage Order 9 § 7(B). (FAC ¶¶ 220–22.) By

---

[5] If Plaintiffs' claims in Counts 2 through 9 fail under the applicable law, then Counts 10 through 13 would also fail. *See, e.g.*, *Salter*, 2021 WL 5049054, at *12 (concluding the plaintiff's waiting time claim is predicated on his wage claims, and because the wage claims failed, the waiting time claim also failed).

comparison, the Arizona Wage Statute requires employers to "maintain payroll records showing the hours worked for each day worked, and the wages and earned paid sick time." A.R.S. § 23-364(D).

In Count 11, Plaintiffs seek "Waiting Time" penalties under Labor Code § 203 based on their allegation that Knight failed to pay them compensation promptly upon discharge. The amount of the penalty is "each former Driver's daily wage multiplied by thirty (30) days." (FAC ¶ 232.) For its part, Arizona law requires that "[w]hen an employee is discharged from the service of an employer, he shall be paid wages due him within seven working days or the end of the next regular pay period, whichever is sooner." A.R.S. § 23-353(A). If an employer fails to pay an employee after his termination, "the employee may recover . . . an amount that is treble the amount of the unpaid wages." *Id.* § 23-355(A).

In Count 12, Plaintiffs seek civil penalties under the California Private Attorney General Act (PAGA), Labor Code § 2698, in amounts depending on the Labor Code section violated. By comparison, Arizona's civil penalty provision permits the Court to impose a civil penalty of at least $250 for the first violation and $1,000 for each subsequent or willful violation. A.R.S. § 23-364(F)–(G).

Finally, in Count 13, Plaintiffs seek damages under California's Business and Professions Code for what they allege are multiple "unfair and fraudulent business acts and practices" by an employer, predicated on all of Plaintiffs' claims detailed above. (FAC ¶ 269.) The Court is not aware of a direct Arizona analog (nor has one been suggested by the parties).

To varying degrees, Arizona and California law differ with regard to all of Plaintiffs' claims, and the Court will therefore proceed with the choice of law analysis.

## 2. Choice of Law Provisions

Knight argues that because the parties' agreements include an Arizona choice of law provision, Restatement § 187 operates to apply Arizona law to Plaintiffs' claims, even to the extent Plaintiffs' claims are premised on work they did in California.

When more than one state has a relationship to or an interest in a contract, courts apply a conflicts analysis to determine which state's law should govern. However, neither a statute nor a rule of law permitting the parties to choose the applicable law confers unfettered freedom to contract at will on this point. Consistent with this principle, Restatement § 187, comment g reads:

Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties.

Section 187 provides a mechanism by which to balance the interest of both the parties and the states. Therefore, when parties include an express choice-of-law provision in a contract, we will perform a § 187 analysis to ascertain the appropriate balance between the parties' circumstances and the states' interests.

*Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441–42 (Ariz. 2003) (internal citations omitted).

In the agreements, the parties included a choice of law provision that designates Arizona law. The ICOAs provide, "This agreement shall be governed by the laws of the United States and the State of Arizona, both as to interpretation and performance." (Doc. 196-1, ICOA ¶ 24.) The TLAs provide, "This Agreement shall in all respects be governed by and construed in accordance with the laws of the United States and State of Arizona without regard to the choice-of-law rules of Arizona or any other State." (Doc. 196-1, TLA ¶ 27.)

To begin with, Plaintiffs' claims are within the scope of the choice of law provisions. As detailed above, even though Plaintiffs characterized their wage-related claims in the FAC as arising under various provisions of California's Labor Code and Wage Order 9, those claims are likely reduced to straightforward minimum wage claims after applying the rules of federal preemption as well as the doctrine that an agreed-to wage structure akin to piece rate pay for each trip—even if mileage-based—does not entitle a driver to extra

compensation for tasks associated with the trip or actual miles driven.[6] And Plaintiffs' remaining minimum wage claims, which involve a determination of whether Plaintiffs' ultimate pay was at least as much as the applicable minimum wage law requires, depend on the ICOAs or TLAs that the drivers entered into. Put another way, while Plaintiffs' claims are not for breach of the ICOAs and TLAs and thus do not arise directly from those agreements, whether Knight violated the applicable minimum wage statute depends on the terms of the agreements.

For example, paragraph 10 of the ICOA, titled "Contract Rate for Services," refers to Addendum D, which is the Contract Rate Schedule detailing the flat rate (or piece rate) pay for any trip. (ICOA ¶ 10 & Add. D.) The ICOA choice of law provision states that the agreement, including the referenced sections, is governed by Arizona law, "both as to interpretation and performance." (ICOA ¶ 24.) Similarly, the TLA choice of law provision states it is "governed by and construed in accordance with" Arizona law. (TLA ¶ 27.) Because the pay rates the parties agreed to in the ICOAs and TLAs are the subject of Plaintiffs' present minimum wage claims, the Arizona choice of law provisions apply because they provide the terms of the agreements are "governed by" Arizona law. Likewise, Plaintiffs' claim that they were misclassified as independent contractors instead of employees—upon which Plaintiffs' claims for damages depend—rests in substantial part on the very contracts that identified them as independent contractors.[7]

---

[6] The parties will have the opportunity in their summary judgment briefing to argue whether this case is distinguishable from the cases regarding preemption and piece rate pay cited by the Court. For the purposes of the choice of law analysis, the Court will assume that Plaintiffs' claims consist of whether, under Knight's pay scheme, Knight paid Plaintiffs at least the minimum wage for all hours worked.

[7] Plaintiffs' reliance on *Narayan*, 616 F.3d at 895, for these purposes is unavailing. That case predated the court decisions finding substantial portions of Plaintiffs' claims under the Labor Code and Wage Order 9 to be preempted or not based on a cognizable legal theory. The resulting minimum wage and related driver classification claims substantially depend on the terms of the ICOAs and TLAs (as well as the performance of the ICOAs), all of which the agreements provide are "governed by" Arizona law. The Court also notes that the Court in *Narayan* applied California's choice of law rules, not those of Arizona.

Restatement § 187, titled "Law of the State Chosen by the Parties," provides that the parties' choice of law

> will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2).[8]

With regard to the first factor, Arizona has a substantial relationship with Knight, an Arizona company, and the parties therefore had a reasonable basis to choose Arizona law to govern their agreements and the performance thereof. Put another way, as a matter of an Arizona company's administration of its business of interstate transportation of goods, Arizona law is a reasonable choice as a legal basis for the agreements Knight entered into with its drivers. *See, e.g.*, *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1036 (D. Ariz. 1989).

The crux of the choice of law question arises in analyzing the second factor. The Court must examine whether California has a materially greater interest than Arizona as to any of Plaintiffs' claims. Restatement § 187(2). Relatedly, had the parties not chosen Arizona law, the Court must examine whether California has the "most significant relationship to the transaction and the parties." Restatement § 188. If California has a materially greater interest as to any of Plaintiffs' claims and the most significant

---

[8] Because under Arizona or California law, the parties could not have resolved whether the drivers are employees or independent contractors by the terms of the contracts alone, Restatement § 187(1) does not apply to Plaintiffs' claims. *See Swanson*, 77 P.3d at 443.

relationship to the transaction and parties, California law should apply to those claims if the application of Arizona law would be contrary to a fundamental policy of California. Restatement § 187(2).

The "most significant relationship" determination is always made in accordance with the broad factors outlined in § 6 of the Restatement. Those factors are:

    (a)    the needs of the interstate and international systems,
    (b)    the relevant policies of the forum,
    (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d)    the protection of justified expectations,
    (e)    the basic policies underlying the particular field of law,
    (f)    certainty, predictability and uniformity of result, and
    (g)    ease in the determination and application of the law to be applied.

Restatement § 6(2).

To support their argument that the Court should apply California law to all their claims, Plaintiffs point to the testimony of the sample of Plaintiffs who sat for a deposition. All but one of the deposed Plaintiffs stated that they spent "50% or more of their time in California while driving for Knight." (Pl. Br. at 1.) Plaintiffs also cite evidence that Knight Transportation has done business in California for over 30 years and operates three terminals in California, and Knight Truck and Trailer Sales has done business in California since 2005. (Pl. Br. at 2.) Plaintiffs characterize themselves as "by definition, California-based drivers" (Pl. Br. at 10), that is, drivers who had a residential address in California and/or were associated with a California terminal at any time during the Class Period (Pl. Br. at 1 n.1; FAC ¶ 130 (class definition)).

In contending that California has a materially greater interest in the determination whether Plaintiffs were independent contractors or employees and whether Knight paid the applicable statutory minimum wage, as well as in contending that application of Arizona law would be contrary to a fundamental public policy of California, Plaintiffs rely principally on *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918 (9th Cir. 2019). In *Senne*, applying California choice of law rules, the Ninth Circuit concluded that

California law applies to minor league baseball players in the California League, that is, for work the players did while in California, regardless of the major league franchise with which they were affiliated. *Id.* at 932. Likewise, for work the players did during spring training, "the laws of Arizona and Florida should apply to the work performed wholly within their respective boundaries." *Id.* at 936.

Although this Court is applying the Arizona choice of law rules, the Court agrees with the reasoning in *Senne* that the state in which an employee performs work—at least if that work lasts "days or weeks" continuously—generally has the greatest interest in applying its wage and overtime laws to that work, regardless of the state of residency of the worker. *Id.* at 932 (pointing to an example of an Illinois plaintiff who spent two months of his six-year career in California to say that the plaintiff was entitled to the protections of California overtime law for his "California work"). Conversely, a foreign state has no legitimate interest "in blocking the application of California law to work performed in California," and the foreign state's interest in "providing hospitable regulatory environments for their own businesses," such as lower costs of doing business through a lower minimum wage, is an interest that applies within its own boundaries, or to persons and events within that state. *Id.* at 929–30 (citing *Sullivan v Oracle Corp.*, 254 P.3d 237 (Cal. 2011)). The Constitution does not "permit one state to project its regulatory regime into the jurisdiction of another state." *Id.* at 930 (citing *Sullivan*, 254 P.3d at 246).

Plaintiffs' application of *Senne* to their own situation, however, is flawed in an important respect. Simply because they claim they were "based" in California—had a residential address in California and/or were associated with a California terminal at any time during the Class Period (FAC ¶ 130)—does not mean that California law applies to all the work they did, including the up-to 50% of work they did outside of California. Their residency in California did not give California a greater interest in work they did in Arizona or any other state; indeed, *Senne* states as much.

This case is complicated by the fact that the very nature of Knight's business is transporting goods, often from state to state, such that a driver works in multiple states

during one trip, and for that trip the driver is paid a fixed sum (and not a sum based on actual miles driven or actual hours worked). Contrary to Plaintiffs' suggestion, California does not have a greater interest in the wages a driver earns while working in six other states on one trip simply because the trip started at a California terminal or the driver is a California resident. It is here, with respect to multi-state trips, that the reasonableness of Knight's choice of a single, uniform law is most clear; it promotes certainty and predictability. A system in which a company such as Knight had to comply with every state's wage and overtime laws for the time a driver was driving through the state would be unmanageable. For example, a determination of what state's law would apply to overtime hours worked on a seven-state trip would be untenable. As detailed above, for related reasons, federal regulations by way of the DOT and FMCSA are in place for the interstate carriage of goods.

Plaintiffs rely on *Oman* to argue that California law should apply to multi-state trips, but there, the Supreme Court of California (applying California choice of law rules) declined to decide whether California minimum wage laws applied to flight attendants' wage claims where they "served on flights in and out of California airports, as well as airports outside the state," because the flight attendants' piece-rate (or "rotation") pay scheme already "complies with the [California] requirement that employers pay their employees at least the minimum wage for all hours worked," essentially mooting the choice of law question for the minimum wage claims. 466 P.3d at 328. The same could be true here: if Knight's piece-rate or trip-based pay scheme as provided in the relevant agreements with Plaintiffs complied with both the Arizona and California requirements to pay Plaintiffs at least the minimum wage for the hours Plaintiffs worked, then the choice of law question for the minimum wage claims would be moot. But the *Oman* court did not hold that California law applied to the flight attendants' minimum wage claims, except to the extent that the flight attendants brought administrative claims predicated on their wage claims. *Id.* ("California's wage statement laws apply only to flight attendants who have

their base of work in California," and "the same is true of California laws governing the timing of wage payments.")

As a result, Plaintiffs have not demonstrated that California has a materially greater interest than Arizona in the wage and overtime laws applied to the multi-state trips of drivers for an Arizona corporation who signed agreements providing the terms of their compensation and providing that Arizona law will apply to govern those agreements. But the Court agrees that if a trip was entirely within California, such that all of a Plaintiff's work was performed in California on that trip, then California has a materially greater interest in enforcing its wage laws for that trip, and applying Arizona law would be contrary to a fundamental policy of California.[9] *See Senne*, 934 F.3d at 931–37.

In sum, based on the application of choice of law principles in the Restatement, the Court will apply California law to Plaintiffs' wage claims and related classification claim based on trips driven entirely within the state of California, and will apply Arizona law to Plaintiffs' wage claims and related classification claim based on multi-state trips.

**IT IS HEREBY ORDERED** that the Court will apply California law to Plaintiffs' wage claims and related classification claim based on trips driven entirely within the state of California and will apply Arizona law to Plaintiffs' wage claims and related classification claim based on multi-state trips.

**IT IS FURTHER ORDERED** that, after considering the Court's summary of the law in this Order applicable to each of Plaintiffs' claims in the First Amended Complaint, the parties shall file any Motions for Summary Judgment within 30 days of the date of this Order (*see* Doc. 347).

Dated this 23rd day of January, 2024.

_____
Honorable John J. Tuchi
United States District Judge

---

[9] In a sister case brought by California drivers against Knight for alleged wage violations, the drivers based their claims only on routes beginning and ending in California. *Martinez*, 2023 WL 2655541, at *2.