WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger Yanez, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Knight Transportation Incorporated, *et al.*, <br><br> Defendants. | No. CV-15-00990-PHX-JJT <br><br> **ORDER AND JUDGMENT** |

At issue are Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. 391, Mot.), to which Defendants filed a Response to Class Member Objections to Approval of Settlement (Doc. 392, Resp.); and Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards (Doc. 381, Attys.' Fee Mot.). The Court held a Final Approval Hearing under Federal Rule of Civil Procedure 23(e)(2) on September 19, 2024. (Doc. 395.)

**I.   BACKGROUND**

This lawsuit began over ten years ago, on March 3, 2014, when Plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton filed a Class Action Complaint in the Superior Court of California. (Doc. 1-3 at 5–39, Compl.) Plaintiffs—who allege they were "based" in California for at least a portion of the relevant time period—seek damages against the companies for which they operated trucks, Defendants Knight Transportation, Inc. and Knight Truck and Trailer Sales, LLC (collectively, "Knight")—both Arizona companies—

for what Plaintiffs claim are multiple wage violations. (Doc. 102, First Am. Compl. (FAC) ¶¶ 36, 37, 130.)

Defendants removed this case to the United States District Court for the Central District of California (Doc. 1), which in turn transferred the case to this Court based on enforceable forum selection clauses in Plaintiffs' contracts with Defendants (Doc. 60). Plaintiffs filed the FAC, the operative pleading, on January 22, 2016. (Doc. 102.) After the parties requested multiple continuances for myriad reasons, Plaintiffs filed their Motion for Class Certification on May 12, 2021, which stated that the proposed class consists of 183 class members.[1] (Doc. 195.) On January 11, 2022, the Court entered an Order granting Plaintiffs' Motion for Class Certification (Doc. 230), and the Ninth Circuit Court of Appeals denied Defendants' petition to appeal that Order (Doc. 232).

On January 23, 2024, the Court entered an Order examining the law applicable to Plaintiffs' claims and determining that California law applies to the wage claims and related classification claim based on trips driven entirely within the state of California, and Arizona law applies to the wage claims and related classification claim based on multi-state trips. (Doc. 349, Choice of Law Order.) The same day, the Court entered an Order determining that Marlin & Saltzman, LLP shall remain class counsel in this matter, denying a motion filed by Blackstone Law requesting that it be named class counsel. (Doc. 348, Choice of Class Counsel Order.) Because class representatives Robert Lira and Matthew Lofton elected Blackstone Law as their counsel in this matter, the sole remaining class representative was Patrick LaCross, who was represented by class counsel Marlin & Saltzman. (Docs. 348, 350, 351.) On February 11, 2024, class counsel received a death certificate indicating Mr. LaCross passed away on December 10, 2023. (Doc. 354.) On class counsel's Motion (Doc. 354) and later Joint Stipulation (Doc. 369), the Court affirmed Roger Yanez and Francisco Noriega as new class representatives. (Doc. 370.)

---

[1] The class members in this lawsuit were previously class members in a prior class action against Defendants, *Chavez Flores v. Knight Transportation Inc.*, District of Arizona Case No. 2:15-CV-01817-SRB, and they opted out of the class in that lawsuit before a settlement was finalized.

On February 22, 2024, the parties filed Cross-Motions for Summary Judgment and *Daubert* Motions. (Docs. 355, 358, 360, 363.) Before filing responses to those Motions, on March 1, 2024, the parties filed a Notice of Settlement. (Doc. 367.) On April 24, 2024, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement (Doc. 376), which the Court granted (Doc. 378), allowing class counsel and the settlement administrator to mail the settlement notice to class members.

On July 24, 2024, five non-representative class members—Robert Lira, Matthew Lofton, Alejandro Patino Garcia, Ernest Carter, and Guillermo Rosete (collectively, "Objecting Class Members"), who are represented by Blackstone Law—filed a "Motion to Sever and Remand" their claims only. (Doc. 379.) In denying that Motion, the Court found that, first, the Objecting Class Members provided no basis under Federal Rule of Civil Procedure 21 for the Court to sever their claims, and second, they failed to timely opt out of the class after they had received notice of their opportunity do so. (Doc. 389.)

Class representative Plaintiffs have now filed a Motion for Final Approval of Class Action Settlement and an associated Motion for Approval of Attorneys' Fees, Costs, and Service Awards. (Docs. 381, 391.) As anticipated, the Final Approval Motion includes objections to the class settlement from the Objecting Class Members, who make up five of the 180 class members to whom the settlement notice was delivered. (Doc. 387, O'Connor Decl. ¶¶ 5–6; Doc. 391-2, O'Connor Supp. Decl. Ex. A.) At the Final Approval Hearing (Doc. 395), the Court heard argument from class counsel, counsel for the Objecting Class Members, and defense counsel, but the Court did not need to hear statements from the Objecting Class Members because their filed objections contained the requisite specificity under Federal Rule of Civil Procedure 23(e)(5)(A). (Doc. 391-2, O'Connor Supp. Decl. Ex. A; Doc. 394.) The Court now determines whether the Settlement Agreement merits final approval under Rule 23(e).

II. **LEGAL STANDARD**

Rule 23(e)(2), which guides the Court in its review of a proposed class action settlement and its protection of absent class members' due process rights, provides that the

Court may only approve a binding class action settlement if it is "fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*See also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Advisory Committee Notes to the 2018 Amendments to Rule 23(e)(2) point out that paragraphs (A) and (B) of this section address procedural concerns, and paragraphs (C) and (D) address substantive concerns.

## III.  ANALYSIS

As a threshold matter, the Court addresses the Objecting Class Members' suggestion that their objections to the class action settlement apply only to them and not to the rest of the class. (*See* 09/19/24 Hr'g Tr. at 2.) At the Final Approval Hearing, counsel for the Objecting Class Members stated, "we're not objecting to the settlement as a whole as it applies to the rest of the class," but rather asking the Court "to issue an order exempting out" the Objecting Class Members from the Settlement Agreement. (09/19/24 Hr'g Tr. at 2–3.) When asked how Rule 23 contemplates their request, counsel did not provide the Court with a legal basis to exempt them from the settlement but rather asked the Court to exercise discretion to allow a second opportunity for these class members to opt out of the class.[2] (09/19/24 Hr'g Tr. at 19.)

---

[2] As noted *supra*, the Court denied the Objecting Class Members' motion to sever their claims under Rule 21 because they could not show their claims lacked commonality with the other class members' claims—consistent with the Court's certification of the class

In December 2022, the class members received notice of their opt out rights in the Notice of Class Action, and the time to opt out has long since expired. (Docs. 234–35.) The proposed Settlement Agreement sent to the class members did not include a second opportunity for class members to opt out. (Doc. 376-2, Kennedy Decl. Ex. A, Settlement Agreement.) In fact, the Settlement Agreement stated, "It is Defendants' position that, as part of the certified class, the [Objecting Class Members] have no right to seek or obtain exclusion from this settlement." (Settlement Agreement ¶ III(G)(6)(b).) It further provided, "The settlement is not contingent upon the inclusion of the [Objecting Class Members]; however, unless otherwise ordered by the court, the [Objecting Class Members] shall not be permitted any special opportunity to opt-out." (Settlement Agreement ¶ III(G)(6)(b).)

It is well established that the Court does not "have the ability to delete, modify or substitute certain provisions" of a settlement agreement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "The settlement must stand or fall in its entirety." *Id.* Thus, as applied here, the Court does not have the ability to add to the Settlement Agreement a second opportunity for class members to opt out, as the Objecting Class Members request. Indeed, the Settlement Agreement expressly states that, in entering into the settlement, Defendants opposed any right by the Objecting Class Members to "seek or obtain exclusion from this settlement." (Settlement Agreement ¶ III(G)(6)(b).) To satisfy the Objecting Class Members' request for a second opportunity to opt out, the Court would be required to reject the Settlement Agreement in its entirety.

As the Court pointed out in its Order denying the Objecting Class Members' motion to sever (Doc. 389), although Rule 23(e)(3) states that the Court "may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so," the Rule does not *require* the Court to reject a settlement on this basis. Indeed, Ninth Circuit case

---

(Doc. 230)—or otherwise distinguish their claims in this action from the claims of the other class members, such that severance of their claims would be appropriate under Rule 21. (Doc. 389.)

- 5 -

law is clear that that there is no requirement that a proposed settlement agreement provide class members with a second opportunity to opt out of the class. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121–22 (9th Cir. 2018); *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 634–35 (9th Cir. 1982) (noting that while some class action settlements allow for a second opportunity to opt out, "they are unusual").

Defendants assert that it is unlikely they would have entered into a settlement agreement after the Court made determinations on the merits in the Choice of Law Order (Doc. 349)—many in Defendants' favor—if Plaintiffs could then opt out of the class and thereby the settlement. (Resp. at 9 (citing *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995)).) As the Ninth Circuit has observed, "'[A]llowing objectors to opt out [after settlement] would discourage settlements because class action defendants would not be inclined to settle where the result would likely be a settlement applicable only to class members with questionable claims, with those having stronger claims opting out to pursue their individual claims separately.'" *Officers for Justice*, 688 F.2d at 635 (quoting *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981)). Thus, "to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored by the law." *Id.*

The Objecting Class Members' and other class members' "rights are protected by the mechanism provided by [Rule 23]: approval [of the settlement agreement] by the district court after notice to the class and a fairness hearing." *Id.* Taking all these factors into account, the Court declines to reject the Settlement Agreement on the basis that it does not give class members another opportunity to opt out, as the Objecting Class Members constructively request. In keeping with its duty to protect absent class members' due process rights, the Court will proceed to determine whether the Settlement Agreement is fair, reasonable, and adequate under Rule 23(e)(2).

### A.   The Adequacy of Class Representatives and Counsel

As detailed *supra*, the class representatives have changed over the ten-year course of this litigation, but nothing in the record indicates to the Court that the present class

representatives, Messrs. Yanez and Noriega, or the just prior class representative, Mr. LaCross, did not act to protect the interests of the class. Moreover, 175 of the 180 class members to whom a settlement notice was delivered did not object to its terms. (Mot. at 4; Doc. 387, O'Connor Decl. ¶¶ 5–6.)

With regard to class counsel, the five Objecting Class Members have made it clear that they "no longer trust class counsel to represent the best interests of the class." (*E.g.*, Doc. 391-2, O'Connor Supp. Decl. Ex. A, Lofton Objections ¶ 9.) As a basis for this opinion, they assert among other things that the Marlin & Saltzman firm somehow colluded with Defendants to settle this case and that Marlin & Saltzman did not keep them immediately informed when attorneys working on the matter changed, including when Mr. Saltzman passed away and Ms. Gold and Ms. Mayhood left the firm. (Lofton Objections ¶¶ 3–5, 7.)

After a two-day hearing in conjunction with its decision that Marlin & Saltzman, not Blackstone Law, should remain class counsel in this matter, the Court discounted these and related assertions because they were either unsupported by evidence or did not affect the adequacy of Marlin & Saltzman's representation of the class. (Doc. 348, Choice of Class Counsel Order; *see also* Docs. 321, 330; Doc. 341, 10/17/23 Hr'g Tr.; Doc. 342, 10/19/23 Hr'g Tr.) Marlin & Saltzman has worked on this case for ten years and managed it through class certification and summary judgment briefing, and both it and Defendants' counsel—Sheppard Mullin Richter & Hampton LLC—have convincingly described the adversarial nature of the relationship between them, both in this litigation and historically. The Objecting Class Members have not presented any new evidence that persuades the Court that class counsel did not vigorously represent the interests of class members throughout this ten-year litigation.[3] For these reasons, the Court finds the first procedural factor in evaluating the fairness of the Settlement Agreement to be met.

---

[3] It appears to the Court from the evidence and history of this case that the Objecting Class Members' objections to the Settlement Agreement are driven by their counsel's animosity toward her former law firm, although the Court did not need to rely on such a finding in its analysis of whether the Settlement Agreement is fair, reasonable, and adequate.

- 7 -

B.  **Arm's Length Negotiation**

The Court also finds that the Settlement Agreement was the result of a good faith, arm's length negotiation—the second procedural factor of Rule 23(e)(2). Again, the record does not support the Objecting Class Members' insinuation that class counsel and defense counsel improperly colluded to reach an agreement. As well-summarized by Defendants:

> This action has been pending for over a decade and includes two trips to the Ninth Circuit, a contested motion for class certification, extensive briefing on which state's law applies to the dispute, and motions for summary judgment. The Court also previously noted that the parties raised at least ten discovery disputes in this case. [Doc. 226.] The parties did not settle at two separate mediations nearly two years apart, and it was only after the Court issued its choice of law order, and with summary judgment motions pending, that the parties were finally able to reach a settlement. [Doc. 376-1, Kennedy Decl. ¶¶ 12–13.] There is nothing to suggest the settlement in this case was negotiated at anything other than arm's length.

(Resp. at 7–8.)

Moreover, as Plaintiffs point out, the final settlement was brokered by an experienced class action mediator, Mark Rudy, which is itself an indicium of arm's length negotiation. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948. For these reasons, the Court is convinced the second procedural factor is satisfied and indicates the Settlement Agreement was reached fairly.

C.  **The Adequacy of Relief**

Under the terms of the Settlement Agreement, Defendants will pay $2.5 million for the benefit of the class, which includes $93,750 to the California Labor and Workforce Development Agency under the Private Attorney General Act (PAGA), Labor Code § 2698, and $31,250 to PAGA aggrieved employees. (Mot. at 4; Doc. 387, O'Connor Decl. ¶ 7.) Plaintiffs suggest that one third of the gross settlement amount, or $833,333, should constitute class counsel's fees and an additional $150,150.88 should constitute class counsel's costs. (Attys.' Fee Mot. at 17.) They also suggest payment of $10,000 in settlement administration costs as well as proposed enhancement payments to five class representatives of $16,000 each. (O'Connor Decl. ¶ 7; Attys.' Fee Mot. at 17.) Taking these

deductions out of the gross settlement amount, the remaining class payout fund is a little over $1.3 million, or an average payment per class member of over $7,000.

In their Final Approval Motion, Plaintiffs state that the proposed settlement amount "is totally non-reversionary"—meaning no part of it will revert to Defendants; that "no claims forms are required of the Settlement Class Members"; and that "the attorneys' fees, costs, administration expenses, and enhancement award to Plaintiffs will all be paid by Defendants from the Gross Settlement Amount." (Mot. at 4.) They also point out that the Settlement Agreement is "narrowly tailored" because the class members' release is only as to "those claims asserted or that could have been asserted in the Complaint based on the facts, theories, and/or statutory or other violations asserted in the Litigation." (Mot. at 5.)

As points of comparison, Plaintiffs show that the relief obtained (and approved by district courts) by class members in settlements in two sister cases against these Defendants was far less than Plaintiffs stand to gain here. In *Martinez v. Knight Transportation, Inc.*, No. 1:16-CV-01730-SKO, 2023 WL 5917989, at *3 (E.D. Cal. Sep. 11, 2023), 5,648 class members agreed to (and the district court approved) a settlement of $400,000 for some of the same unpaid wages claims brought in this case, or about $70 per truck driver. And in *Chavez Flores v. Knight Transportation Inc.*, a case in the District of Arizona which had the same claims as those in the present action and from which the class members in the present action requested exclusion, 650 class members agreed to a settlement of $1.5 million, or an average of about $2,300 per truck driver. (District of Arizona Case No. 2:15-CV-01817-SRB, Doc. 376-2.)

These factors all weigh in favor of a finding that the relief offered in the Settlement Agreement is fair, reasonable, and adequate.

### 1. Costs, Risks, and Delay of Trial and Appeal

The Court also finds the amount of relief provided by the Settlement Agreement to be adequate when considering the potential award class members could obtain by continuing to litigate this case. In the Choice of Law Order, the Court found that California law only applies to Plaintiffs' employment classification claim and associated wage claims

for trips made entirely in California, and Arizona law applies to the balance of Plaintiffs' claims. (Doc. 349.)

Based on the evidence the parties provide, Arizona law applies to over 75% of Plaintiffs' claims. But Plaintiffs based their claims in the FAC entirely on California law, and most of their claims have no Arizona analog. (Doc. 349.) Even to the extent the FAC states claims for failure to pay minimum wage, Plaintiffs appear to have no claim under Arizona law. Two of the Objecting Class Members state that their "attorneys ran a damages projection that included other causes of action in the complaint" and they would somehow be entitled to "unpaid wages using conservative presumptions under [unspecified] Arizona law" as well as penalties for failure to pay wages and wage statement violations under A.R.S. §§ 23-355(A) and 23-364(F). (*E.g.*, Doc. 391-2, O'Connor Supp. Decl. Ex. A, Rosette Objections ¶ 5.)[4]

However, no allegations in the FAC support the inference that Plaintiffs were not paid the minimum wage under Arizona law, even if Plaintiffs could show they were misclassified as independent contractors instead of employees under Arizona law. (Doc. 349.) As the Court stated in the Choice of Law Order (Doc. 349), to the extent the Objecting Class Members are arguing that their claims for compensation for waiting time, inspections, fueling, paperwork, and actual miles driven are viable wage claims under Arizona law, that would only be the case if Plaintiffs' compensation as determined *on a workweek basis* fell below the Arizona minimum wage. *See Alonzo v. Akal Sec. Inc.*, No. CV-17-00836-PHX-JJT, 2017 WL 5158576, at *3 (D. Ariz. Nov. 7, 2017) (citing Ariz. Admin. Code § R20-5-1206(C) (2017)). No allegations demonstrate it did. As a result, the Objecting Class Members' penalty claims under A.R.S. §§ 23-355(A) and 23-364(F) are also without merit, because those claims would be predicated on a failure to pay adequate wages under Arizona law in the first place. In sum, the Objecting Class Members have not shown that Plaintiffs are likely to recover any damages for their claims under Arizona law.

---

[4] Mr. Rosette spelled his name "Rosete" in prior filings (*see* Doc. 379) but "Rosette" in his objections (Doc. 391-2).

- 10 -

Approximately 23.6% of class members' trips were driven entirely within California. (Doc. 391-1, Chasworth Decl. ¶ 8.) For the claims based on these trips, to which California law applies, the Court found that Plaintiffs' wage claims premised on actual miles driven and hours worked (FAC Counts 3–6) likely have no merit because the operating agreements show the parties understood that Defendants' compensation system was essentially a fixed-fee per trip system, which the Ninth Circuit found was an acceptable compensation system in, among other cases, *Ayala v. U.S. Xpress Enterprises, Inc.*, 851 F. App'x 53 (9th Cir. 2021). Likewise, the Court found Plaintiffs' claims for rest and meal period compensation under California law (FAC Counts 8–9) also lack merit because the California meal and rest period rules are preempted by Federal Motor Carrier Safety Administration rules as applied to property-carrying commercial motor vehicle drivers, as the Ninth Circuit concluded in *International Brotherhood of Teamsters, Local 2785 v. FMSCA*, 986 F.3d 841 (9th Cir. 2021), and *Valiente v. Swift Transportation Co. of Arizona, LLC*, 54 F.4th 581 (9th Cir. 2022).

The Court also found Plaintiffs' "unreimbursed expense and illegal deduction" claims (FAC Counts 2, 7) are likely preempted by the Department of Transportation Truth-in-Leasing regulations, 49 C.F.R. §§ 376.11–12, where a carrier transports goods in equipment it does not own. *See Salter v. Quality Carriers, Inc.*, 2021 WL 5049054, at *6 (C.D. Cal. Oct. 27, 2021). It is only here that the Objecting Class Members still assert that they may have a valid claim upon which relief may be granted under California law. (*E.g.*, Lofton Objections ¶¶ 19–20.) The Objecting Class Members contend that Defendants are both the carrier and owner of the transportation equipment, such that the Truth in Leasing regulations do not apply. (*E.g.*, Lofton Objections ¶¶ 19–20.) Defendants disagree, pointing out that, under the Independent Contractor Operating Agreements (ICOAs) between Plaintiffs and Knight Transportation, Plaintiffs were owner operators and Knight Transportation was the carrier and lessee of the equipment. (Resp. at 5.) While a minority of Plaintiffs entered into Tractor Lease Agreements with Knight Truck and Trailer Sales to acquire their trucks in the first place, the relevant lease agreement for the purposes of

1 preemption is the lease from Plaintiffs to Knight Transportation, the carrier, as set forth in
2 the ICOAs. (Resp. at 5–6.) Upon consideration, the Court finds Defendants appear to have
3 the better argument as to the "unreimbursed expense and illegal deduction" claims under
4 California law. As a result, all of Plaintiffs' claims to which California law applies—for
5 the 23.6% of trips they drove entirely within California in the relevant period—appear to
6 lack merit.

7 Relevant to the determination whether the relief in the Settlement Agreement is adequate is the consideration of risk to both sides. If this case were to proceed, Plaintiffs would be at serious risk of a judgment against them and no resulting relief. For their part, Defendants state they agreed to the $2.5 million settlement for the purpose of avoiding further costs of litigation—including summary judgment and trial—and for the purpose of attaining finality in this ten-year-old case. Of course, if they went forward with this case, Defendants would also risk a conclusion that some of Plaintiffs' unreimbursed expenses claims under California law are not preempted, though the risk of the converse is higher for Plaintiffs. The Court finds an average award of more than $7,000 per Plaintiff to be adequate considering the costs, risks, and delay involved in proceeding further with this litigation. *See Officers for Justice*, 688 F.2d at 625 (stating "district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice" and "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution" (internal quotations omitted)).

### 2.     Method of Distributing Relief

No meritorious objections have been raised as to the proposed method of distributing relief to the class members, nor does the Court find the proposed method objectionable. To begin with, the Court found the settlement notice procedures to be fair, reasonable and adequate (Doc. 378), and the settlement notice was successfully delivered to all but two class members. The Court does not give weight to the Objecting Class Members' contention that the settlement notice was inadequate in not providing individualized estimated payment amounts, because it was sufficient to give class members

notice of the settlement, and class members could request an individualized calculation of their estimated payout amount from the settlement administrator, which many of them did. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Additionally, the Court notes with approval that payment will be made to class members without the need for claims forms and on a pro-rata basis, based on the number of weeks each class member provided services to Defendants in California during the relevant period.[5] (*See* Mot. at 20–22; Doc. 387, O'Connor Decl.) For these reasons, the proposed method of distributing relief is fair, adequate, and reasonable.

### 3. Attorney's Fees

Upon review of Plaintiffs' separate Motion for Approval of Attorneys' Fees, Costs, and Service Awards (Doc. 381), the Court finds that class counsel's requested compensation amounts, which will come out of the $2.5 million settlement amount, are reasonable based upon the law of the Ninth Circuit.

With respect to attorneys' fees, class counsel has demonstrated the percentage-of-fund approach is appropriate and 33.3% of the total settlement fund is reasonable considering the amount of time class counsel spent on this matter, the risks involved and results achieved, class counsel's experience and skill, and attorneys' fees awards in similar cases. (Attys.' Fee Mot. at 6–12.) The Court also bases its reasonableness finding on the fact that the traditional lodestar method used to calculate attorneys' fees would have resulted in a fee award of more than double that requested using the percentage-of-fund calculation method, as adequately demonstrated by class counsel's fee application papers. (Attys.' Fee Mot. at 12–14; Docs. 381-1–381-3, Decls. of Kennedy, Trush, Harrison.) With respect to expenses, class counsel has also adequately justified its requests for $150,150.88 in litigation costs and $10,000 in settlement administration costs. (Attys.' Fee Mot. at 14; Decls. of Kennedy, Trush, Harrison.)

---

[5] In one of their Declarations, Defendants point out that their records show that Objecting Class Member Patino Garcia was a resident of Texas the entire time he provided services to Defendants. Because the parties do not adequately develop arguments as to Patino Garcia's entitlement to relief as a class member, the Court declines to reach any associated conclusion on this issue. (*See* Doc. 386, Rios Decl. ¶ 4.)

Lastly, the Court agrees with Plaintiffs that an enhancement award of $16,000 per class representative, to include both past and present class representatives, is reasonable and appropriate, because Plaintiffs have shown that all five class representatives were active in this matter, they conferred benefits on the entire class, and the requested enhancement amount is an average of awards given in similar cases. (Attys.' Fee Mot. at 14–16.) Mindful of its duty to protect the interests of absent class members, the Court will grant class counsel's requests for the award of fees, costs, and enhancements as reasonable in the context of this ten-year-old matter.

### 4. Agreements

The parties do not provide the Court with any evidence of side agreements to the Settlement Agreement, so the Court need not consider this factor in evaluating the adequacy of the settlement under Rule 23(e).

## D. Equitable Treatment of Class Members

As the Court stated *supra*, the method of calculating relief to class members out of the total settlement amount on a pro rata basis, as well as the method of distributing the relief, is fair, reasonable, and adequate. The parties present no information from which the Court could conclude that class members will be treated inequitably. Moreover, the enhancement awards are not only designated for present class representatives, but also past class representatives in equal amount.

# IV. CONCLUSIONS

For all of these reasons, the Court approves the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e). The Court also approves the amounts requested by class counsel for attorneys' fees, costs, and enhancement awards.

**IT IS THEREFORE ORDERED** granting Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. 391) and overruling the objections of the Objecting Class Members (Doc. 391-2, Ex. A).

**IT IS FURTHER ORDERED** granting Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards (Doc. 381).

**IT IS FURTHER ORDERED** that, after Settlement administration has been completed in accordance with the Settlement Agreement, and in no event later than 280 days after the Effective Date, the Settlement Administrator shall prepare a declaration regarding the distribution of settlement funds. Class Counsel shall file the Settlement Administrator's declaration no later than **August 11, 2025**.

**IT IS FURTHER ORDERED** entering final Judgment, as follows:

Having considered Plaintiffs' Motion for Final Approval of the Class Action Settlement and Motion for Attorneys' Fees, Costs, and Enhancement Awards (collectively, the "Motions"), the points and authorities and declarations submitted in support of the Motions, including the Settlement Agreement, due and adequate notice having been given to the Class Members as required by the Court's Preliminary Approval Order, and determining that the Settlement is fair, reasonable, and adequate, and otherwise being fully informed and good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. This Final Judgment incorporates by reference the definitions in the Settlement Agreement as though fully set forth herein, and all capitalized terms used herein shall have the same meaning as set forth in the Settlement Agreement.

2. The Court has jurisdiction over the subject matter of the Action and the Parties, including all Settlement Class Members and PAGA Aggrieved Employees.

3. Pursuant to the Preliminary Approval Order, the Settlement Notice was sent to each Class Member by first-class mail. The Settlement Notice informed Class Members of the terms of the Settlement, their right to receive a Class Member Payment, and their right to object to the class action portion of the Settlement, and their right to appear in person or through counsel at the Final Approval Hearing and to be heard regarding the approval of the Settlement. Adequate periods of time were provided for these procedures.

4. The Court finds and determines that the Settlement Notice and the procedure for its distribution afforded adequate protections to Class Members and provide the basis

for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members. Notice was accomplished in all material respects in the manner prescribed by the Settlement. The Court finds and determines that the notice provided in this case was the best notice practicable under the circumstances and satisfies the requirements of the Federal Rules of Civil Procedure, Rule 23 and due process.

5. For the reasons stated in the Preliminary Approval Order, the Court finds and determines that the Class meets all of the legal requirements for class certification. It is hereby ordered that the Class is finally certified for purposes of the settlement of this Action.

6. The Settlement Class is defined as: all members of the class certified by the Court on January 11, 2022; specifically, all persons who provided services to Defendant Knight Transportation, Inc. as an owner-operator driver while either residing in California or while assigned to or affiliated with a Knight Transportation, Inc. terminal in California during the Class Period, and who requested exclusion from the class in *Jaime Chavez Flores et al. v. Knight Transportation Incorporated et al.,* District of Arizona Case No. 2:15-CV-01817-SRB.

7. The Court confirms as final the appointments of Plaintiffs Roger Yanez and Manuel Francisco Noriega as Class Representatives. The Court finds that Plaintiffs' investment and commitment to the litigation and its outcome ensured adequate and zealous advocacy for the Class, and that their interests aligned with those of the Class Members.

8. The Court confirms as final the appointment of Marlin & Saltzman, LLP and its attorneys Alan S. Lazar and Cody R. Kennedy as Class Counsel, working together with associated counsel, James M. Trush of the Trush Law Office and Todd H. Harrison of Perona, Langer, Beck & Harrison.

9. The Court confirms as final the appointment of CPT Group, Inc. as the Settlement Administrator.

10. The Court finds that the settlement of this Action, on the terms and conditions set forth in the Settlement, is in all respects fair, reasonable, adequate, and in the best interests of the Class Members, especially in light of the benefits provided to Class Members, the strength of Plaintiffs' claims and Defendants' defenses, the complexity, expenses and probably duration of further litigation, and the risk and delay inherent in possible appeals. The Court further finds that the Settlement is the result of arm's length negotiations between experienced counsel representing the interests of the Class and Defendants respectively, following thorough and adequate factual and legal investigation, with the assistance of an experienced and well-respected mediator.

11. The response of Class Members to the Settlement further supports final approval.

12. The Settlement, which has been filed with the Court and shall be deemed incorporated herein, is finally approved and shall be implemented in accordance with its terms.

13. The Court directs Defendants to pay the Gross Settlement Amount of $2,500,000.00 to the Settlement Administrator pursuant to the Settlement Agreement.

14. The Court hereby awards the five Representative Plaintiffs enhancement awards in the total amount of $80,000.00 (which is comprised of $16,000.00 to each Representative Plaintiff).

15. The settlement of claims for civil penalties under PAGA in the amount of $125,000.00 is hereby finally approved. Seventy-Five Percent (75%), or $93,750.00, shall be paid to the California Labor and Workforce Development Agency. The remaining Twenty-Five Percent (25%), or $31,250.00, will be distributed to PAGA Aggrieved Employees pursuant to the Settlement Agreement.

16. The Court hereby awards $833,333.00 in attorneys' fees and $150,150.88 in litigation costs to Marlin & Saltzman, LLP, the Trush Law Office, and Perona, Langer, Beck & Harrison. The Court finds that the requested award of attorneys' fees is reasonable

for a contingency fee in a class action such as this. Counsel has also established the reasonableness of the requested award of attorneys' fees via their lodestar crosscheck, and the Court finds that the rates, hours billed, and risk multiplier are fair and reasonable.

17. The Court hereby awards $10,000.00 to CPT Group, Inc. for Settlement Administration Costs.

18. The Court considered the five objections to the Settlement submitted by Blackstone Law on behalf of its clients Robert Lira, Matthew Lofton, Alejandro Patino Garcia, Ernest Carter, and Guillermo Rosete aka Rosette. The Court finds that these objectors do not state any legitimate grounds sufficient for the Court to reject the Settlement, and the Court therefore overrules the objections.

19. The Settlement Administrator shall make all payments contemplated by the Settlement Agreement, including all payments to Settlement Class Members and PAGA Aggrieved Employees, as set forth in the Settlement.

20. The Court approves the procedure for the treatment of uncashed settlement checks established by the Settlement. Pursuant to that procedure, the sum of uncashed settlement payments shall be transmitted to the California Controller's Office Unclaimed Property Division, with an identification of the person to whom the funds belong, to be held in trust for those persons who did not timely cash their settlement checks. Any checks tendered to Settlement Class Members and PAGA Aggrieved Employees that are returned as undeliverable will also be transmitted to the State Controller's Office Unclaimed Property Division with an identification of the person to whom the funds belong, to be held in trust for those persons, until such time they claim their property.

21. By operation of the entry of this Final Judgment and pursuant to the Settlement, as of the Effective Date of the Settlement, all Settlement Class Members shall be deemed to have released the Released Parties from all class claims set forth in paragraph E(1) of the Settlement Agreement. As of the Effective Date of the Settlement, all PAGA Aggrieved Employees and the State of California shall be deemed to have released the

Released Parties from all PAGA Claims set forth in paragraph E(2) of the Settlement Agreement.

22. This Final Approval Order and Judgment shall be posted on the information-only website maintained by the Settlement Administrator within seven (7) calendar days after entry of the Final Approval Order and shall remain there for at least 180 days after the date of Final Approval.

23. Without affecting the finality of the entry of this Judgment in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Judgment and Settlement.

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this case.

Dated this 16th day of October, 2024.

Honorable John J. Tuchi
United States District Judge